UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    R & J VENTURES, INC.                     CASE NO. 07-61462

                              Debtor          Chapter 7
--------------------------------------------------------
R & J VENTURES, INC.
                       Plaintiff

              vs.                        ADV. PRO. NO.  05-90086

CARMEN GENTILE, SR., CARMEN GENTILE,
JR., JO CHRISTINE WAGNER, WILLIAM D.
HARWOOD, JOSEPH PISANO, RICHARD
CASTIGLIA, BONNIE ALTARAC d/b/a
AFFORDABLE EQUIPMENT, ALLSHIELD
CORPORATION, GECKO, INC., and
ADIRONDACK WOOD PRODUCTS, INC.

                      Defendants
-----------------------------------------------------------
IN RE:

    BARRITA CORPORATION                 CASE NO. 07-61325

                             Debtors       Chapter 7
-----------------------------------------------------------
BARRITA CORPORATION
                       Plaintiff

              vs.                        ADV. PRO. NO. 05-90085

CARMEN GENTILE, SR., CARMEN GENTILE,
JR., JO CHRISTINE WAGNER, WILLIAM D.
HARWOOD, JOSEPH PISANO, RICHARD
CASTIGLIA, BONNIE ALTARAC d/b/a
AFFORDABLE EQUIPMENT, ALLSHIELD
CORPORATION, GECKO, INC., and
ADIRONDACK WOOD PRODUCTS, INC.

                      Defendants
-----------------------------------------------------------

APPEARANCES:

| | |
|---|---|
| NAPIERSKI, VAN DENBURGH & NAPIERSKI, LLP<br>Attorneys for the Plaintiffs<br>296 Washington Ave. Ext.<br>Albany, NY 12203 | SHAWN T. NASH, ESQ.<br>Of Counsel |
| SNOW BECKER KRAUSS, P.C.<br>Attorneys for Carmen Gentile, Sr., Carmen Gentile, Jr., Allshield Corporation, Gecko, Inc. and Adirondack Wood Products, Inc.<br>605 Third Avenue, 25th Floor<br>New York, New York 10158 | DEREK A. WOLMAN, ESQ.<br>Of Counsel |

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

On December 4, 2007, the Court issued its Memorandum-Decision, Findings of Fact, Conclusions of Law and Order in the above-referenced adversary proceedings. The Court granted the motions of Carmen Gentile, Sr., Carmen Gentile, Jr., Allshield Corporation, Gecko, Inc. and Adirondack Wood Products, Inc. (the "Defendants"), awarding sanctions against Shawn T. Nash, Esq. ("Nash") pursuant to 28 U.S.C. § 1927.

Nash had filed a motion on December 19, 2006, in each of the adversary proceedings seeking to amend the complaints, which had previously been dismissed by the Hon. Robert E. Littlefield, Jr., U.S. Bankruptcy Judge, Northern District of New York (Albany Division) based on statute of limitations grounds. Nash argued that he should be permitted to amend the complaints based on equitable estoppel. The motions were heard by Judge Littlefield on March 24, 2007, and Orders were signed in both adversary proceedings denying Nash's motions on May

14, 2007. The Defendants filed a motion in each adversary proceeding on July 11, 2007, as amended on July 16, 2007, seeking sanctions against, *inter alia*, Nash, which this Court granted on December 4, 2007. In their motions they sought $31,036.50 in legal fees and $363.73 in expenses in connection with their prior opposition to Nash's motions to amend the complaints. *See* Exhibit G, attached to Memorandum of Law, filed July 16, 2007, at Exhibit G. They also sought $17,403 in attorneys' fees and $2,809.78 in expenses in connection with the preparation of their motion seeking sanctions. *Id.* at Exhibit H.

On August 27, 2007, the Defendants filed a Supplemental Memorandum in support of their motions for attorneys' fees in which they requested $31,714 in legal fees at a reduced rate for partners of $210 hours, rather than $400 as originally requested, and $2,405.57 in expenses, based on the holding in *DIRECTV v. Arnold*, 392 F. Supp.2d 415 (N.D.N.Y. 2005). Assuming an increase of 20% from 2005 when *DIRECTV* was decided, they request an award of legal fees of $38,938.77 based on an hourly rate for partners of $252.

As noted above, the Court rendered its Memorandum-Decision, Findings of Fact, Conclusions of Law and Order on December 4, 2007. Because the Court was unable to determine which hours had been spent "addressing the limited issue of equitable estoppel" and the time spent in connection with their request for sanctions based on the time records submitted on behalf of the Defendants, the Court directed that they "file with the Court and serve upon Nash redacted time records to reflect reasonable fees incurred in connection with the limited issue of equitable estoppel and the issue of sanctions for the Court's review and consideration in connection with

an award pursuant to 28 U.S.C. § 1927 within 30 days of the date of this Order." [1]

On January 7, 2008, the Defendants filed the affirmation ("January 2008 Affirmation") of Derek Wolman, Esq. ("Wolman"), which included time records for the period from December 19, 2006 through February 28, 2007, identifying 93.1 hours and fees totaling $31,036.50 and expenses totaling $2,405.57. *See* Exhibit "A," attached to the January 2008 Affirmation. Services rendered beginning March 14, 2007 through June 13, 2007, identifying 83.9 hours and requesting fees totaling $17,413, are set forth in Exhibit "B," attached to the January 2008 Affirmation. Exhibit "C," attached to the January 2008 Affirmation, identifies 31.3 hours and requests fees totaling $6,805 for the period from July 2, 2007 through August 14, 2007.

In his January 2008 Affirmation, Wolman indicates that it was difficult to break out the services provided on the issues of equitable estoppel and sanctions from those provided in connection with opposing the Plaintiffs' motions to amend their complaints, as requested by the Court. He estimates that approximately 20 hours or 10% of the time spent, as set forth in Exhibits A-C, was not related to the issues of equitable estoppel or sanctions. In particular, he notes that the time records set forth at Exhibit "B" reflect time spent exclusively on addressing sanctions. He also acknowledges that between July 2, 2007 and August 27, 2007, as set forth in Exhibit "C," there was some time expended in opposing the Plaintiffs' motion to amend their complaints. Finally after deducting 19.2 hours from Exhibit A for services performed by his partner, Michael DuBoff, Esq. ("DuBoff") that he alleges did not address the issues of equitable estoppel or sanctions and making other adjustments to the fees for services provided over the eight month

---

[1] By letter filed on January 3, 2008, the Defendants requested an extension of time to file their time records, which the Court granted, allowing them to file their time records on January 7, 2008.

5

period, the Defendants request an award of sanctions in the amount of $27,331 covering what they assert represents 188.2 hours[2] spent in addressing equitable estoppel and sanctions. *See* January 2008 Affirmation at 7-8.

## DISCUSSION

The decision whether to award sanctions under 28 U.S.C. § 1927 is within the Court's discretion. *See Ramashwar v. Espinoza,* Case No. 05 Civ. 2021, 2006 WL 36752, at *10 (S.D.N.Y. Jan. 6, 2006), citing *Wilder v. GL Bus Lines*, 258 F.3d, 126, 130 (2d Cir. 2001); *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000); *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, Case No. 00 Civ. 7909, 2001 WL 1388063, at *5 (S.D.N.Y. Nov. 8, 2001). The primary purpose for imposing § 1927 sanctions is to deter attorneys from engaging in conduct that unnecessarily delays the litigation or generates needless proceedings. *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

In considering an award of sanctions against Nash in these cases, it is necessary that the Court consider the reasonableness of the hours spent on behalf of the Defendants on the issues of equitable estoppel and sanctions. In this regard, the Court must be able to determine whether there are any services which were "duplicative, unproductive, excessive or otherwise unnecessary." *Bailey v. Dart Container Corp. of Michigan,* 980 F.Supp. 584, 593 (D. Mass.

---

[2] The Court calculates the total number of hours to be 177.4 as set forth in the January 2008 Affirmation at 7-8, taking into consideration the adjustment for DuBoff's hours from 40.2 to 38.4 and including Wolman's entry of 8 hours on February 28, 2007, for attending a hearing in Albany, New York.

1997). In this case, the issues were not particularly complex, yet there were three attorneys with an average of 30 years of experience each working on this matter, as well as two associates. In addition, the time entries are rather non-specific and often vague, referring generally to research, attendance at conferences and review of documents. There is also the explanation of Wolman that the hours set forth in Exhibit A for the most part addressed the issue of equitable estoppel, and those set forth in Exhibits B and C addressed the Defendants' request for sanctions.

Because of the vague and often non-specific time entries, the Court, in order to determine the reasonableness of the fees sought, finds it necessary to examine the actual work product generated by Defendants' attorneys in connection with the issues of equitable estoppel and sanctions. Upon review of Wolman's Affirmation, dated February 9, 2007 ("February 2007 Affirmation") (Dkt. No. 50),[3] the Court notes that of the nine pages of the document, only one page, namely page 12, specifically addresses the issue of equitable estoppel. Most of the February 2007 Affirmation provides background and addresses the factual substance for which the Plaintiffs sought to amend their complaints. According to the Memorandum of Law, filed by the Defendants on February 9, 2007 ("February 2007 Memorandum"), it is acknowledged that "[t]he single specific allegation forming the basis for Plaintiff's claim of equitable estoppel is that 'Carmen Gentile, Jr. has retained the possession of the corporate books of the Debtor Corporations and has refused to turn them over.'" *See* February 2007 Memorandum at 18. That issue is addressed at pages 17-18 of the Defendants' 26 page memorandum of law. Pages 1-5 provide background for the Defendants' opposition to the Plaintiffs' motions to amend their

---

[3] For ease of discussion, the docket numbers identified herein are those found in *Barrita Corp. v. Gentile et al.* (Adv. Pro. 05-90085). Comparable filings are to be found in *R & J Ventures, Inc. v. Gentile et al.* (Adv. Pro. 05-90086).

complaints. Pages 6-14 identify the causes of action in those complaints and argues that the complaints fail to state a cause of action. In this regard, page 15 addresses collateral estoppel. The majority of the analysis in the memorandum of law, set forth at pages 16-26, addresses the statute of limitations, an issue previously resolved by an Order of the Court, dated November 10, 2005, dismissing the original complaints because the Court found that they were barred by the statute of limitations.

On July 16, 2007, Defendants filed the affirmation of Wolman, dated July 11, 2007 ("July 2007 Affirmation") (Dkt. No. 70), along with a Memorandum of Law, dated July 11, 2007 ("July 2007 Memorandum") (Dkt. No. 72). After an introduction of eight pages by way of background, Defendants set forth the basis for their seeking sanctions against Nash. Pages 9-14 address sanctions pursuant to Fed.R.Bankr.P. 9011/Fed.R.Civ.P. 11. Page 15 contains a single paragraph asserting entitlement to sanctions in the form of attorneys' fees, costs and expenses pursuant to 28 U.S.C. § 1927. Pages 16-17 contain an additional four paragraphs that reiterate Defendants' contention that they are entitled to sanctions pursuant to 28 U.S.C. § 1927.

Finally, on August 13, 2007, Defendants filed a Supporting Reply (Dkt. No. 78) to Nash's Response, filed on August 9, 2007 (Dkt. Nos. 76-77). Of the nine pages of the Supporting Reply, approximately two pages address 11 U.S.C. § 1927 and the issue of bad faith on the part of Nash in asserting equitable estoppel.

According to the January 2008 Affirmation of Wolman, all of the work performed by Evan Michalidis, Esq. ("Michalidis"), identified as a first year associate billing at an hourly rate of $120 per hour, concerned the issue of "equitable estoppel only." *See* January 2008 Affirmation at ¶ 6. The total number of hours listed for Michalidis on Exhibit "A" was 4.5 hours or $540. In addition,

8

Susan Smith, Esq., a sixth year associate billing at an hourly rate of $150, spent 2.20 hours on researching the issue of equitable estoppel or $330. *See* January 2008 Affirmation at ¶ 9 and Exhibit "A." Wolman, a partner with 24 years of experience, billed for a total of 8.0 hours during the period covered by Exhibit "A,"[4] at a rate of $210 per hour or $1,680. DuBoff, a partner with 35 years of experience, billed 57.6[5] hours at a rate of $210 hours. Wolman acknowledges that DuBoff's time records "do not detail the specific issues addressed . . . . However, DuBoff has advised that while he cannot at this juncture delineate the time expended that relates to equitable estoppel or sanctions versus other defenses, only a small fraction of the time expended by DuBoff was on defenses to the Motion to Amend other than equitable estoppel." *See* January 2008 Affirmation at ¶ 10. Accordingly, Wolman has reduced DuBoff's hours by one third or 19.2, for a total of 38.4 or $8,064. A review of the time set forth in Exhibits "B" and "C," which arguably was spent on the Defendants' motion for sanctions, reveals the following: Michalidis billed a total of 64.4 hours or $7,728.[6] According to Wolman, Smith billed .70 additional hours[7] or $105 in addressing sanctions, and Wolman billed 19.8 hours or $4,158. In addition, James Blair, Esq.

---

[4] Exhibit "A" also identifies 8 hours spent appearing in Albany, New York, on March 28, 2007, in connection with the motions to amend the complaints. Because the hearing on February 28, 2007 focused on more than simply the issue of equitable estoppel, the Court will not consider those hours in its determination.

[5] According to the January 2008 Affirmation, DuBoff billed a total of 60.3 hours, which Wolman reduced to 40.2. However, in reviewing Exhibit "A," the Court calculates that 57.6 hours were billed by DuBoff. Accordingly, the Court has made adjustments to the one-third reduction in hours for DuBoff based on the 57.6 hours or a total of 38.4 hours.

[6] It appears that Wolman has made an adjustment to Michalidis' hours as the Court calculates their total to be 78.9, rather than 68.9 stated by Wolman in his affirmation.

[7] It appears that Wolman has again made an adjustment in Smith's hours down from 1.9 to .7 hours spent on the issue of sanctions.

billed 1.2 hours at an hourly rate of $210 or $252. The billings break down to $10,614 spent in addressing the issue of equitable estoppel and $12,243 spent in addressing the issue of sanctions. The Court in its discretion has not included the 30.2 hours or $2,416 in paralegal services.[8] As this Court noted in *In re Bennett Funding Group, Inc.*, 213 B.R. 234 (Bankr. N.D.N.Y. 1997), the applicant claiming reimbursement for such services has the burden of providing the Court with information that would allow the Court to determine whether the services were necessary and had to be performed by a paralegal as opposed to being performed by a secretary, whose services are typically covered by a firm's overhead. *Id.* at 248. In these cases, the services performed by the paralegal, Josephine Vitiello, included phone calls to the Court and client, file management, arranging for CourtCall, conferences with the attorneys and document retrieval, *inter alia,* and in some instances were not even billed to the client.

With respect to the time devoted to their motions for sanctions, the Court must consider the fact that at least two-thirds of the arguments in the July 2007 Memorandum focused on sanctions pursuant to Fed.R.Bankr.P. 9011. The Court will consider only the attorneys' fees incurred in addressing sanctions pursuant to 28 U.S.C. § 1927, the issue on which the Defendants were successful. *See Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 562 (7th Cir. 2007). Accordingly, the Court determines that $4,081 (one third of $12,243) is reasonable.

It is also necessary to consider the reasonableness of the fees of $10,614 attributed to the issue of equitable estoppel. This is comprised of 38.4 hours attributed to DuBoff, 8 hours attributed to Wolman and 6.7 hours attributed to Michalidis and Smith, or 53.1 hours. As

---

[8] It appears that Wolman has made an adjustment in the paralegal's hours as the Court calculates a total of 30.7 hours, rather than 30.2 hours as he asserts in his affirmation.

10

mentioned above, Wolman acknowledged that "[t]he single specific allegation forming the basis for Plaintiff's claim of equitable estoppel [was] that 'Carmen Gentile, Jr. ha[d] retained the possession of the corporate books of the Debtor Corporations and ha[d] refused to turn them over.'" *See* February 2007 Memorandum at 18. All that was necessary, in the view of the Court, was to determine the standard for equitable estoppel in the Second Circuit and apply it to that allegation. That determination should have required a minimum of research. Indeed, the Court was able to locate a 2007 decision of the U.S. Court of Appeals for the Second Circuit within minutes of beginning its research. *See Abbas v. Dixon,* 480 F.3d 636 (2d Cir. 2007). In *Abbas* the court stated that "[u]nder New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Id*. at 642 (citations omitted); *see also OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 94 (2d Cir. 2006) (stating that '[e]quitable estoppel is proper where the enforcement rights of one party would create injustice to the other party who has justifiably relied on the words or conduct of the party against whom estoppel is sought"). In the view of the Court, all that was required was to apply this standard to the allegation that the delay in commencing the actions was due to the alleged refusal by Gentile to turn over the books and records of the corporate debtors. Obviously, his alleged refusal was not a basis for asserting equitable estoppel, as the Court found in its Memorandum-Decision of December 4, 2007. In fact, the limited discussion in both the July 2007 Memorandum and the Supporting Reply filed by the Defendants on August 13, 2007 devoted to the arguments opposing Nash's assertion of equitable estoppel supports the fact that the issue did not require extensive research or argument on the part of the Defendants.

With this in mind, it is difficult to understand how Defendants' counsel spent 53.1 hours on addressing the issue of equitable estoppel. The Court's determination of the reasonableness of those hours is made more difficult given the lack of specificity in many of the time entries listed by Defendants' counsel.[9] A reduction in the requested award of sanctions in connection with the issue of equitable estoppel seems appropriate. *See, generally, Vishipco Line v. Charles Schwab & Co.*, Case Nos. 02 Civ. 7823, 02 Civ. 7846, 02 Civ. 7915, 02 Civ. 7928, 02 Civ. 7929, 2003 WL 1936142, *3 (S.D.N.Y. April 23, 2003) (reducing fees by ten per cent due to a failure to adequately describe the services rendered). Allowing for some time to set forth background information before addressing the actual issue, the Court is of the opinion that $3,538 (one third of $10,614) is reasonable. Thus, the total award in connection with the issues of equitable estoppel and sanctions is determined to be $7,619.

The expenses listed by the Defendants include charges for lunches on February 7, 2007 and February 8, 2007, as well as lodging and mileage apparently in connection with a 11:00 a.m. hearing in Albany, New York, on February 28, 2007. A review of the dockets in both adversary proceedings reveal no hearings conducted on February 7, 2007 or February 8, 2007. In addition, in the view of the Court, overnight accommodations were unnecessary for the hearing held on February 28, 2007. There are also charges totaling $1,602.08 for Westlaw research between March 1, 2007 and May 31, 2007, without any specifics or allocation of the time spent on which issues during that three month period. Accordingly, the Court, in its discretion, declines to award

---

[9] The Court recognizes that the time entries, as provided on behalf of the Defendants, were intended for submission by their attorneys to their clients and not to the Court. Unfortunately, their clients may not require the specificity that the Court requires in determining their reasonableness, particularly when it is awarding sanctions against an attorney.

12

sanctions covering the Defendants' expenses.

Nash contends that before the Court makes any final award of sanctions it should consider his financial situation. As recognized by this Court in its letter to Nash and Wolman, dated January 10, 2008 (Dkt. No. 104), the Advisory Committee Notes to the 1993 amendments to Fed.R.Civ.P. 11, applicable to both parties and attorneys, expressly state that "partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources." However, this Court's Memorandum-Decision of December 4, 2007, awarded sanctions against Mr. Nash, an attorney and not a party to the adversary proceeding, pursuant to 28 U.S.C. § 1927, not Fed.R.Civ.P. 11. The Court acknowledges that in *Oliveri* the Second Circuit Court of Appeals addressed sanctions awarded pursuant to both Rule 11 and § 1927, and in *dicta,* indicated that it was within a court's discretion "to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." *Oliveri*, 803 F.2d at 1281. Without ruling on the applicability of such consideration when sanctions are based on 28 U.S.C. § 1927 alone, this Court does not believe it appropriate or necessary to consider Mr. Nash's financial circumstances given the fact that the Court has already reduced the amount of attorneys' fees for which he is responsible for reimbursing Defendants as a sanction from $22,857, as adjusted to $7,619. Reducing the amount any further would not, in the opinion of the Court, serve to deter him from any future misconduct which might result in an unnecessary delay in the proceedings. *See, generally*, *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1496 (7th Cir. 1989) (noting that although the sanctioned attorney indicated that it would be a hardship for him to pay the award of sanctions, which had been reduced to a fraction of the expenses incurred by the defendants in that case, "[a] sanction without teeth may

13

lack sufficient bite for those purposes [namely, to deter and punish]" if the court were to make any further reductions).

Based on the foregoing, it is hereby

ORDERED that the Defendants in both adversary proceedings are awarded a combined total of $7,619 in sanctions pursuant to 28 U.S.C. § 1927, payable by Nash to the law firm of Snow Becker Krauss P.C., on behalf of the Defendants, within 180 days of the date of this Order.

Dated at Utica, New York

this 12th day of March 2008

                                                /s/   Hon. Stephen D. Gerling
                                                STEPHEN D. GERLING
                                                Chief U.S. Bankruptcy Judge